UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| SUZIE F., | |
|---|---|
| Plaintiff, | Case No. C18-1835JLR |
| v. | ORDER REVERSING AND REMANDING DENIAL OF BENEFITS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Suzie F. seeks review of the denial of her application for disability insurance benefits. (*See* Compl. (Dkt. # 3).) Plaintiff contends that the administrative law judge ("ALJ") erred in (1) discounting Plaintiff's testimony, (2) discounting the opinions of Plaintiff's treating primary care physician and neurologist, (3) discounting the opinions of an examining neuropsychologist, (4) rejecting or failing to address multiple lay witness statements, and (5) assessing Plaintiff's residual functional capacity ("RFC"). (Pl. Op. Br. (Dkt. # 11) at 1.) As discussed below, the court REVERSES the final decision of the Commissioner of Social Security ("Commissioner") and REMANDS the matter for an award of benefits.

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 1

## II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, 20 C.F.R. § 404.1520, the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since September 15, 2014, the alleged onset date. *See* 20 C.F.R. §§ 404.1571-76.

**Step two:** Plaintiff has the following severe impairments: Multiple sclerosis ("MS") with residual effects. *See* 20 C.F.R. § 404.1520(c).

**Step three:** Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

**Residual Functional Capacity:** Plaintiff can perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she can frequently use her upper extremities to reach, handle, and finger. She can occasionally stoop, squat, crouch, crawl, kneel, and climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can perform unskilled, repetitive, routine tasks in two-hour increments. She can be expected to be absent from work up to eight days a year and be off-task up to eight percent of the time while still meeting the minimum production requirements of her job.

**Step four:** Plaintiff cannot perform any past relevant work. *See* 20 C.F.R. § 404.1565.

**Step five:** Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See* 20 C.F.R. §§ 404.1569, 404.1569(a).

(Admin. Record ("AR") (Dkt. # 8) at 17-28.) The ALJ thus found that Plaintiff had not been under a disability, as defined by the Social Security Act ("Act"), from September 15, 2014, through the date of the ALJ's decision. (*Id.* at 28.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (*See id.* at 1-4.)

## III. ANALYSIS

Plaintiff, as the claimant, bears the burden of proving that she is disabled within the meaning of the Act. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Pursuant to 42 U.S.C. § 405(g), the court may set aside a denial of social security benefits only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Although the court is required to examine the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**A.  The ALJ Harmfully Erred in Discounting Plaintiff's Symptom Testimony**

Plaintiff argues that the ALJ erred in discounting her symptom testimony. (Pl. Op. Br. at 13-17.) The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). At this stage, the claimant need only show that the impairment could reasonably have caused some degree of the symptoms; she does not have to show that the impairment could reasonably be expected to cause the

severity of the symptoms alleged. *Id.* The ALJ found that Plaintiff met this step because her medically determinable impairments could reasonably have caused the symptoms she alleged. (AR at 22.)

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15). In evaluating the ALJ's determination at this step, the court may not substitute its judgment for that of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (AR at 22.) The ALJ reasoned that Plaintiff's statements were inconsistent with the medical evidence and Plaintiff's activities. (*Id.* at 22-25.)

The ALJ's determination that Plaintiff's testimony was inconsistent with the medical evidence does not withstand scrutiny. An ALJ "cannot simply pick out a few isolated instances" of medical health to support rejecting the plaintiff's testimony, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of her symptoms." *Attmore v. Colvin*, 827

F.3d 872, 877 (9th Cir. 2016). Here, the ALJ noted that Plaintiff had infrequent MS relapses and pointed to medical evidence in the record suggesting that Plaintiff had normal strength, sensation, and gait. (*See* AR at 22-24.) This is not an accurate representation of the entirety of the medical evidence. Even in times where Plaintiff was not relapsing, she had residual symptoms, such as fatigue and diminished balance. (*See id.* at 553, 569, 589, 611, 656, 879, 993, 1012.) The ALJ's analysis did not paint a fair picture of the medical evidence, and the ALJ therefore erred in rejecting Plaintiff's symptom testimony as inconsistent with the medical evidence.

The ALJ's determination that Plaintiff's activities were inconsistent with the severity of symptoms to which she testified also fails to withstand scrutiny. An ALJ may reject a plaintiff's symptom testimony based on her daily activities if they contradict her testimony or "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603). But the ALJ's analysis must be a reasonable interpretation of the evidence. *See Thomas*, 278 F.3d at 954. Here, the ALJ noted that Plaintiff worked as a receptionist for three hours a day in 2015. (AR at 24.) But Plaintiff only performed this job a few days a week, and only for a few months. (*See id.* at 77, 198, 208-09, 344-45.) The ALJ stated that Plaintiff was active in a bowling league. (*Id.* at 24.) But Plaintiff testified that she only bowled three times a month, and served as the secretary of the league once a week. (*Id.* at 63, 68.) The ALJ noted that Plaintiff traveled, including a trip to Disneyland. (*Id.* at 24.) But Plaintiff used a wheelchair to get around on that trip. (*Id.* at 57.) The ALJ noted that Plaintiff cared for a

friend's child once a week. (*Id.* at 24.) But Plaintiff merely drove the child to school. (*Id.* at 56, 59.) The ALJ noted that Plaintiff participated in a five-mile MS walk. (*Id.* at 24-25.) But Plaintiff testified that she only walked about a block, and rode in a wheelchair the remainder of the way. (*Id.* at 60.) The ALJ noted that Plaintiff decided to be a Mary Kay representative. (*Id.* at 24.) But Plaintiff testified that she had only signed up to do so; she had not made any money yet. (*Id.* at 86.) The ALJ noted that Plaintiff served as the wedding planner for her stepdaughter's wedding. (*Id.* at 25.) But the record reveals that Plaintiff served only as the go-to person on the day of the wedding. (*See id.* at 35, 58-59.) The ALJ's interpretation of the record here was selective, at best, and ignored the parts of the record that clearly contradicted his credibility determination.

Finally, the ALJ noted as evidence contradicting Plaintiff's testimony that Plaintiff was trying to become pregnant. (*Id.* at 24.) This is not a valid reason to discount Plaintiff's testimony. *See Kelly v. Astrue*, No. 1:11-cv-000738-LJO-SKO, 2012 WL 3638029, at *11 (E.D. Cal. Aug. 21, 2012) ("The Court finds no rational basis to discredit Plaintiff's pain testimony based upon the exercise of her fundamental right to bear a child."); *see also Rappe v. Colvin*, No. 1:14-CV-03195-JTR, 2015 WL 5692232, at *6 (E.D. Wash. Sept. 28, 2015). The ALJ gave no explanation as to how Plaintiff's desire to get pregnant contradicted her testimony regarding the severity of her symptoms, and thus the ALJ erred.

**B.     The ALJ Harmfully Erred in Discounting the Opinions of Plaintiff's Treating Primary Care Physician and Neurologist**

Plaintiff argues that the ALJ erred in rejecting the opinions of her treating primary

care physician, Stephen Lu, M.D., and treating neurologist, John Huddlestone, M.D. (Pl. Op. Br. at 3-10.) An ALJ must give "clear and convincing" reasons to reject the uncontradicted opinions of a treating doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating doctor's opinions are contradicted, the ALJ may reject them by giving "'specific and legitimate reasons' supporting by substantial evidence in the record." *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Dr. Lu was Plaintiff's primary care physician. (*See, e.g.*, AR at 579-86, 593-601, 832-70.) Dr. Lu submitted a multiple sclerosis medical source statement, dated July 7, 2017. (*Id.* at 913-19.) In that statement, Dr. Lu opined that Plaintiff had marked physical and cognitive limitations. (*See id.*)

Dr. Huddlestone was Plaintiff's treating neurologist. (*See, e.g.*, *id.* at 551-53, 587-92, 608-12, 619-71.) Like Dr. Lu, Dr. Huddlestone submitted a multiple sclerosis medical source statement in July 2017. (*Id.* at 920-25.) Dr. Huddlestone opined that Plaintiff had physical and cognitive limitations ranging from moderate to severe. (*Id.*)

The ALJ gave the opinions of Dr. Lu and Dr. Huddlestone little weight. (*Id.* at 25.) The ALJ reasoned that these opinions were inconsistent with the doctors' treatment notes and Plaintiff's activities. (*Id.*) The ALJ further reasoned that the doctors' opinions were largely based on Plaintiff's self-reports, which the ALJ had already discounted, because "at the hearing, [Plaintiff] disclosed that these doctors asked her questions about her functional limits, reading from the forms, and that the providers then completed the forms based on her responses to them." (*Id.*)

The ALJ's first two reasons for rejecting the treating doctors' opinions—that they were inconsistent with the doctors' treatment notes and Plaintiff's activities—fail for the same reasons they failed with respect to Plaintiff's testimony. *See supra* Part III.A. The ALJ did not reasonably interpret the evidence regarding the medical evidence and Plaintiff's activities, and thus erred.

Furthermore, the ALJ erred in rejecting the treating doctors' opinions as being largely based on Plaintiff's self-reports. The ALJ's analysis assumes that the treating doctors were willing to ignore their own evaluations and lie by opining that Plaintiff had whatever limitations she told the doctors to say. "The [ALJ] may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995). Both doctors treated Plaintiff and performed objective examinations when doing so. (*See, e.g.*, AR at 589, 611, 623, 656, 665, 833, 988, 993.) And, as discussed above, the ALJ has not shown that these records were inconsistent with the limitations to which the doctors opined. The ALJ therefore erred in rejecting Dr. Lu and Dr. Huddlestone's opinions for being too heavily based on Plaintiff's self-reports.

**C. The ALJ Harmfully Erred in Discounting the Opinions of the Examining Neuropsychologist**

Plaintiff argues that the ALJ erred in discounting the opinions of examining neuropsychologist Howard Lloyd, Psy.D. (Pl. Op. Br. at 12-13.) Dr. Lloyd examined Plaintiff on December 9, 2014. (AR at 469-72.) Dr. Lloyd opined that Plaintiff had some cognitive deficits related to memory and ability to maintain attention with multiple auditory demands. (*See id.* at 471.) Dr. Lloyd opined that it was "not realistic" that

Plaintiff could perform full-time work, but that "[s]he should be able to manage a 20 hour workweek" with "some accommodations for her cognitive difficulties." (*Id.*) Dr. Lloyd opined that these accommodations would include additional time to master new job tasks, and that Plaintiff was "not likely to be able to meet expectations for rapid task performance." (*Id.* at 472.)

The ALJ "accounted for Dr. Lloyd's assessment" by limiting Plaintiff to unskilled, routine, and repetitive work. (*Id.* at 26.) The ALJ "accounted for" Dr. Lloyd's opinion that Plaintiff would need additional time to learn new tasks, as well as her fatigue, by including in the RFC that Plaintiff would be off-task up to eight percent of the work day. (*Id.*) The ALJ gave "little weight to Dr. Lloyd's implication that [Plaintiff] was limited to part-time work with accommodations for cognitive difficulties as this appeared to be conjecture at best." (*Id.*) Plaintiff challenges only the ALJ's rejection of this last part of Dr. Lloyd's opinion. (*See* Pl. Op. Br. at 12-13.)

The ALJ's reasoning here was too vague to withstand scrutiny. An ALJ may not reject a medical opinion "with boilerplate language that fails to offer a substantive basis for" the ALJ's conclusion. *Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.")). Dr. Lloyd examined Plaintiff and reviewed her medical records. (*See* AR at 469-72.) Dr.

Lloyd noted, among other things, that Plaintiff suffered from fatigue and had difficulty concentrating with multiple demands on her attention, both of which at least arguably support his opinion. (*See id.* at 470-71.) The ALJ did not address these findings or provide any specifics supporting his rejection of Dr. Lloyd's opinions, and thus erred.

**D.     The ALJ Partially Erred in Evaluating the Lay Witness Statements**

Plaintiff argues that the ALJ erred in evaluating several lay witness statements in the record. (*See* Pl. Op. Br. at 7-9, 14-16.) Plaintiff argues that the ALJ failed to address lay witness statements from Patricia Rose, Jon Erickson, Bonnie F. (Plaintiff's stepdaughter), Pat Johns, Jack McNeal, and Todd Roney. (*Id.*) Ms. Rose's statement is the only one that was made an exhibit in the record. (*See* AR at 344-45.) The parties dispute when the other statements were submitted. (*See* Def. Resp. Br. (Dkt. # 16) at 14-15; Pl. Reply Br. (Dkt. # 17) at 7.)

In determining disability, "'an ALJ must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ must "give reasons germane to each witness" before he can reject such lay witness evidence. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal citations and quotation marks omitted). "Further, the reasons 'germane to each witness' must be specific." *Bruce*, 557 F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

1.     <u>The ALJ Did Not Err in Evaluating Ms. Rose's Statement</u>

Ms. Rose, Plaintiff's former employer, submitted a statement dated July 31, 2017.

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 10

(AR at 344-45.) Ms. Rose stated that Plaintiff had worked for her part-time as a receptionist in 2015. (*Id.* at 344.). Ms. Rose stated that Plaintiff was unable to maintain consistent attendance, so the two of them mutually agreed to end Plaintiff's employment. (*Id.* at 344-45.)

Contrary to Plaintiff's arguments, the ALJ did address Ms. Rose's statement, giving it little weight. (*Id.* at 26.) The ALJ discounted Ms. Rose's statement because the receptionist job Plaintiff was performing "required greater mental demands" than jobs that fell within Plaintiff's RFC. (*See id.*) This was a germane reason to discount Ms. Rose's statement, as her statement did not directly address whether Plaintiff could work at a job that was consistent with the RFC. The ALJ therefore did not err in discounting Ms. Rose's statement.

### 2. The ALJ Harmfully Erred by Failing to Address the Other Lay Witness Statements

Mr. Erickson, Ms. F., Mr. Johns, Mr. McNeal, and Mr. Roney wrote letters describing their observations of Plaintiff. (*See id.* at 34-35, 38-40.) The record is ambiguous as to when these statements were submitted. At the hearing, the ALJ acknowledged that five statements were received prior to the hearing (on August 11, 2017, per Plaintiff's counsel), and stated that they would be admitted and marked as exhibits. (*See id.* at 54.) The record does not contain five witness statements as exhibits, however. (*See id.* at 204-349.) To add further confusion, three of the five statements at issue here are dated after the date on which they were allegedly submitted. (*See id.* at 34-35, 38.)

The ALJ did not address the five lay witnesses' statements. (*See id.* at 17-28.) The Appeals Council acknowledged them, but determined that the statements "d[id] not show a reasonably probability that [they] would change the outcome of the decision." (*Id.* at 2.)

Regardless of the ambiguity as to when the lay witnesses' statements were submitted, the ALJ erred in failing to address them. The ALJ admitted at least some of the statements at the hearing, and then failed to discuss them. (*See id.* at 17-28, 54.) Moreover, these statements do not merely parrot Plaintiff's testimony, but add context to the record. In particular, these statements relate directly to Plaintiff's activity level, on which the ALJ relied to reject Plaintiff's testimony and the opinions of her treating doctors. (*See id.* at 24-25, 34-35, 38-40.) The Appeals Council's cursory determination that these statements "d[id] not show a reasonable probability that [they] would change the outcome of the [ALJ's] decision" was not a fair reading of the evidence. (*Id.* at 2.) Accordingly, the ALJ and the Appeals Council harmfully erred in failing to evaluate the lay witness statements from Mr. Erickson, Ms. F., Mr. Johns, Mr. McNeal, and Mr. Roney.

**E.     The ALJ Harmfully Erred in Assessing Plaintiff's RFC**

Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC for two reasons. (Pl. Op. Br. at 9-12.) First, Plaintiff argues that the ALJ did not base his determination that Plaintiff would be off-task eight percent of the time and absent eight days a year on evidence in the record. (*Id.* at 10-12.) Second, Plaintiff argues—consistent with her prior

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 12

arguments—that the ALJ erred in assessing Plaintiff's testimony, the medical opinions, and the lay witness statements, which deprived the RFC assessment of substantial evidentiary support. (*See id.* at 9, 13, 17.)

The court need not decide Plaintiff's first argument because Plaintiff's second argument resolves the matter. As discussed above, the ALJ erred in evaluating Plaintiff's symptom testimony, the medical evidence, and some of the lay witness statements. *See supra* Parts III.A-D. The entire RFC was therefore not supported by substantial evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040-41 (9th Cir. 2007) (holding that ALJ's RFC assessment and step five determination were not supported by substantial evidence where the ALJ's RFC and hypotheticals to vocational expert failed to include all of the claimant's impairments). As a result, the ALJ harmfully erred in his RFC determination.

## F. The Court Remands for An Award of Benefits

Plaintiff asks the court to remand this matter for an award of benefits. (Pl. Op. Br. at 17-18.) Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits, known as the "credit-as-true" rule. *Id.* at 1045. First, the court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020). Second, the court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can

be made, and whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted). If the first two steps are satisfied, the court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. "Even if [the court] reach[es] the third step and credits [the improperly rejected evidence] as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

Plaintiff has met each prong of the credit-as-true rule. First, the ALJ did not give legally sufficient reasons for rejecting Plaintiff's testimony, Dr. Lu, Dr. Huddlestone, and Dr. Lloyd's opinions, and five of the lay witness statements. *See supra* Part III.A-D.

Second, there are no obvious issues or inconsistencies that need to be resolved on remand. All three of the doctors who have evaluated Plaintiff opined that she was not capable of working full-time. (*See* AR at 471-72, 918-19, 925-26.) Dr. Lu and Dr. Huddlestone opined that Plaintiff would need unscheduled breaks of five to fifteen minutes more than once a day, and would have more than three absences per month on average. (*Id.* at 918-19, 925-26.) Each doctor thoroughly evaluated Plaintiff, and there are no contradictory opinions from doctors who examined or treated Plaintiff in the record. (*See id.* at 469-70, 589, 611, 623, 656, 665, 833, 988, 993.) The statements from Mr. Erickson, Ms. F., Mr. Johns, Mr. McNeal, and Mr. Roney bolster the finding that Plaintiff could not work a full work day or week. (*See id.* at 34-35, 38-40.)

Third, if the opinions of Dr. Lu, Dr. Huddlestone, and Dr. Lloyd (as well as the lay witness statements) are credited as true, then a finding of disability would be required. The vocational expert testified that "less than one day a month, [sic] is pretty much the outside edge" of what employers accept in terms of absences. (*Id.* at 88.) The vocational expert further testified that employers typically only accept employees being off task up to 10 percent of the time. (*Id.* at 89.) The doctors' absence and off-task opinions exceed this threshold. (*See id.* at 471-72, 918-19, 925-26.) The evidence thus establishes that Plaintiff is disabled.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for an immediate award of benefits.

DATED this 23rd day of August, 2019.

JAMES L. ROBART
United States District Judge